Nathan R. MERCER, et al., Plaintiffs,

v.

**GERRY BABY PRODUCTS COMPANY, Defendant.**

Civ. No. 3–93–CV–10168.

United States District Court, S.D. Iowa, Davenport Division.

Feb. 17, 1995.

John O. Moeller, James L. Fetterly, Timothy J. Fetterly, Elizabeth L. Wolf and Stephen G. Lickteig, for plaintiffs.

Dana M. Craig, Richard C. Garberson, Mark L. Zaiger, William E. Wallace, III, David C. Eddy, Patricia O'Beirne and William M. Bosch, for Gerry Baby Products Co.

Richard C. Bauerle, John Egan, Paul A. Izzo, Linda E. Frischmeyer, Stuart R. Lefstein, Lori R. Lefstein, Roger A. Lathrop, Martha L. Schaff, Michael K. Bush and William L. Bush for third-party defendants.

## RULING ON DISCOVERY MOTIONS

BREMER, United States Magistrate Judge.

This matter came before the Court on various discovery motions. Hearings were held February 10th and February 14, 1995. Appearing were: John Moeller, Gary Gordon, David Eddy, William Wallace, Stuart Lefstein, Lori Lefstein, Jean Feeney, Roger Lathrop, Jim Hoffman, John Egan & Michael Stone.

This set of motions is part of the ongoing discovery drama which has reflected the ill-will between counsel for Plaintiff and Defendant, and dragged the Third–Party Defendants along down the extensive and expensive road of depositions and document requests. Efforts by the Court to force counsel to take more responsibility for their own behavior have failed. Disagreements, large and small, have resulted in motions to compel, to stay discovery, and for protective orders. Counsel have called each other liars and been accused of fraud. Concepts of professionalism and civility have not been the lodestar of the discovery process. The process required by Local Rule 14(e) to personally confer to resolve or narrow disputes breaks down because of the animosity which exists. Depositions have been unilaterally set and cancelled. In short, this case is a mess because the lawyers are out of control. Whether this is merely a reflection of the clash of personalities involved or has been client-driven, it must stop now.

In an effort to get this case back on track and to maintain a schedule which will allow for a trial in 1996, the Court makes the following rulings on discovery motions and amends the scheduling order. A special master is appointed to manage discovery, provide opportunities for alternative dispute resolution and foster settlement discussions. Although the use of the special master increases transactional costs in the short run, this increase will be minimal compared with the expenses (time, money, and energy) incurred to-date, and should result in savings to each party in the long run.

### A. Procedural background.

This case was filed November 10, 1993. It involves the death of one child, serious injuries to another and claims by the parents, as a result of a fire which occurred January 18, 1993. Plaintiff alleges that the origin of the fire was a Gerry baby monitor. Gerry has filed Third–Party Complaints against four others, alleging that their products were involved in the fire or contributed to the children's injuries.

This file is presently over 6 volumes, 30 pages of docketing and has more than 175 pleadings, many of which relate to discovery disputes. No fewer than 27 motions to compel or for protective orders have been filed. Spoliation of evidence has been alleged against parties, and fraud against counsel. Typically these motions include ad hominem attacks, and demonstrate counsel's inability to personally confer to resolve or narrow disputes. The depositions have been fraught with interruptions, instructions not to answer and unilateral time limitations. They have included great moments in legal oratory such as:

Mr. Wallace: "Please sit down, do not hover over the witness."

Mr. Gordon: "Stick it in your ear."

Neither the letter nor spirit of the *Code of Professionalism of the Iowa State Bar Association* (copy attached) has been met.

### B. *Pending motions.*

1. *Motions to compel/for expenses relating to Fisher's deposition (Clerk #'s 143, 148, 150, 151).*

■ Counsel have agreed to set aside certain weeks for depositions, and have had difficulty in arranging a schedule of witnesses as well as making use of all the days reserved. Defendant has cooperated in locating and securing appearances of present and former Gerry employees, and made reasonable efforts to expedite the deposition process. When one of the former employees, Mr. Fisher, indicated that he needed to be subpoenaed, and even then that he might not attend, Plaintiff's counsel had him served with a subpoena for deposition on January 18, 1995. This was set for the same time as another former employee's deposition, Mr. Gregg. Counsel for Gerry raised concerns with counsel for Plaintiff about this schedule, and was assured that it was designed merely to make a record of Fisher's non-compliance with the subpoena, so that his attendance could be compelled. In response, on January 17, 1995 counsel for Gerry rescheduled Mr. Gregg to the next round of deposition time, believing that to be a more efficient schedule. Mr. Fisher did show up on the 18th, and asked to confer with counsel for Gerry, Mr. Wallace. All attorneys in attendance took an early lunch break to allow for this. Upon their return, they found Mr. Wallace had excused Mr. Fisher for the day, and also rescheduled him to the next round of depositions. Thus, all in attendance were left with a wasted afternoon which had been reserved for depositions.

Mr. Wallace maintains that because Mr. Fisher's deposition could not have been completed in 4 or 5 hours, it was pointless to start it on January 18. The depositions of both Mr. Fisher (who did take a full day) and Mr. Gregg (who took one-half hour) have been completed. Clearly, Mr. Gregg's deposition could have been completed had he been allowed to appear on January 18.

The scheduling decisions made by Mr. Wallace were not reasonable. The Court finds that pursuant to Fed.R.Civ.P. 37 the motions for sanctions are granted, and that a judgment for attorneys' fees for the lost time are awarded. Counsel for Gerry shall pay: a) $460.00 to attorney Gary Gordon; b) $400.00 to the Prince Group, Inc.; c) $340.00 to Nicholas Bakeris; and d) $540.00 to Holmes Products Co.

2. *Gerry's resisted motion to allow additional discovery from Pittway/First Alert (Clerk # 152).*

The Third–Party Defendant Pittway/First Alert has filed a Motion for Summary Judgment on all claims. Gerry needs more, but not all, of the information it requested in order to adequately respond to the motion.

Pursuant to Fed.R.Civ.P. 56(f), IT IS ORDERED that by **March 1, 1995** Pittway/First Alert shall provide additional product literature, including what may have been sent to Mercer's employer before the product was purchased, and an exemplar box. Additionally, a brief (up to 4 hour) telephone deposition of Pittway/First Alert employee Beth Webber will be allowed, to provide the foundation for the complaint reports which have been produced. Counsel shall personally confer to resolve or narrow their dispute relating to the scope of documents from litigation files. At a minimum, answers to interrogatories (Plaintiff's and Pittway/First Alert's), requests for admission and a list of depositions should be provided. Gerry is granted to **March 15, 1995** to respond to the Motion for Summary Judgment.

3. *Gerry's motion to compel discovery from Third–Party Defendant Holmes (Clerk # 165).*

This shall be heard by the Court at 4:00 **p.m. CST February 24, 1995** by phone call placed by counsel for Gerry. Counsel shall confer to resolve or narrow this dispute prior to this hearing.

### 4. *Amended schedule.*

The parties are encouraged to file full or partial Motions for Summary Judgment in order to make the best use of the time available for hearing arguments on such mo-

tions. The Fed.R.Civ.P. 26(f) conference set for 4:00 p.m. on March 15, 1995 is cancelled. The pretrial schedule is amended:

A. All discovery shall be completed by **October 1, 1995.**

    1. All fact discovery shall be completed by **June 1, 1995.**

B. Expert witnesses, with Fed.R.Civ.P. 26(a)(2)(B) reports shall be disclosed:

    1. Plaintiff: by **June 1, 1995;**

    2. Defendant: by **August 1, 1995;**

    3. Third–Party Defendants: by **September 1, 1995.**

C. Dispositive motions shall be filed by **December 1, 1995.**

D. This is a jury trial which will take an estimated 8 weeks to try. The Clerk of Court shall set it after **April 1, 1996,** and notify the parties as soon as possible of the trial date.

### 5. *Special Master.*

■ The use of a special master in this district for the purpose of discovery management is an extraordinary event, occurring perhaps once a decade. The exceptional circumstances surrounding the progress of discovery justify such an appointment to better manage the timing, form, and requirements of discovery. The use of a master will result in greater efficiency and cost-savings to all parties.

Pursuant to Fed.R.Civ.P. 53 IT IS ORDERED that attorney Robert Allbee, of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Suite 600, 100 Court Avenue, Des Moines, Iowa 50309–2231, Tel: (515) 243–7611, FAX 515–243–2149, is appointed to serve as special master for the, purposes of managing discovery and settlement discussions, including ruling on all disputes and taking all measures necessary and proper for the efficient performance of his duties.

The master shall be compensated at the rate of $200 an hour, plus expenses which shall be paid by the parties: a) Plaintiff and Defendant, $50/hour each; b) Third–Party Defendants, $25/hour each. The master shall

prepare a report upon the matters submitted to him as provided in Fed.R.Civ.P. 53(e).

IT IS SO ORDERED.

ATTACHMENT

CODE OF PROFESSIONALISM

OF THE

IOWA STATE BAR ASSOCIATION

While professionalism cannot be defined with precision, the following precepts should guide a lawyer's conduct:

1. In litigation or contentious situations, lawyers should strive to maintain their objectivity in representing the interest of the client and in the relationship with the Court and opposing Counsel.

2. In fulfilling the lawyer's primary duty to the client, a lawyer must be ever conscious of the broader duty to the legal system. In all matters, a lawyer's word is the lawyer's bond.

3. Lawyers should treat each other, their clients, the opposing parties, the Courts and members of the public with courtesy and civility, and conduct themselves in a professional manner at all times.

4. Lawyers, as officers of the Court, are an integral part of the justice system. They are entitled to be treated with respect by the Court and Court personnel, and shall treat fellow lawyers, the Court and its personnel with equal respect.

5. In adversary proceedings clients are litigants, and though ill feelings may exist between clients, such ill feelings should not influence a lawyer's conduct, attitude or demeanor towards opposing Counsel.

6. Effective advocacy does not require antagonistic or obnoxious behavior. Lawyers should adhere to the higher standard of conduct which judges, fellow attorneys, clients and the public may rightfully expect.

7. The lawyer, absent exceptional circumstances, has the discretion to determine the accommodations to be granted opposing Counsel in all matters not directly affecting the merits of the cause or

prejudicing the client's right, such as extensions of time, continuances, and adjournments.

8. In litigation, the lawyer should not employ procedures which are only intended to cause delay, annoyance or insult to opposing Counsel, the parties or witnesses.

9. The lawyer has a duty to students and new members of the Bar regarding professionalism and the customs of the profession.

10. Recognizing a lawyer's commitment to family and the profession, except where necessary to protect the rights of the client, no hearing, trial or deposition shall be set ex parte during the week of the Annual Meeting of the Iowa State Bar Association, and in the month of August.